**Christine MAHNE, Plaintiff–Appellant,**

v.

**FORD MOTOR COMPANY; Donald Petersen; and Harold MacDonald, Defendants–Appellees.**

No. 88–2137.

United States Court of Appeals, Sixth Circuit.

Argued Sept. 21, 1989.

Decided April 9, 1990.

Rehearing and Rehearing En Banc Denied June 18, 1990.

---

Robert A. Sedler (argued), Wayne State University Law School, Detroit, Mich., Edward M. Ricci, Ricci & Roberts, West Palm Beach, Fla., for plaintiff-appellant.

Ryan A. Husaynu, John A. Kruse, Detroit, Mich., John M. Thomas (argued), Ford Motor Co., Office of General Counsel, Dearborn, Mich., for defendants-appellees.

Before NELSON and RYAN, Circuit Judges; and MEREDITH, District Judge.[*]

RYAN, Circuit Judge.

This case presents a choice of law problem well-suited for a law school civil procedure examination. It requires us to decide whether Michigan or Florida law governs the plaintiff's product liability action. We conclude that Michigan law controls and, therefore, reverse the judgment of the district court.

### I.

On April 16, 1985, Marlo Mahne, a Florida resident, was a passenger in a 1967 Ford Mustang that was rear-ended by another vehicle and burst into flames. The accident occurred in Florida. As a result of the accident, Miss Mahne, then 15 years old, was severely burned. Her mother and next friend, Christine Mahne, brought a products liability action against defendant Ford Motor Company in a Michigan state court. Defendant's headquarters and principal place of business are located in Michigan and the design, testing, and manufacture of the 1967 Ford Mustang occurred there. The Michigan lawsuit was dismissed on *forum non conveniens* grounds, following which plaintiff brought suit in a Florida state court. She voluntarily dismissed that action when defendants argued that the suit was foreclosed by the Florida statute of repose which bars product liabili-

---

* The Honorable Ronald E. Meredith, United States District Judge for the Western District of Kentucky, sitting by designation.

ty actions brought twelve years after the date of delivery of the completed product to its original purchaser. Fla.Stat. § 95.031(2) (1985) (amended 1986).[1]

Plaintiff then brought the present action against Ford and two of its officers in the District Court for the Eastern District of Michigan, pursuant to the court's diversity jurisdiction. 28 U.S.C. § 1332. Plaintiff alleged that defendants breached an implied warranty of fitness and negligently designed, manufactured, and tested the vehicle's fuel system and rear-end structure. Defendants filed a motion to dismiss, maintaining that the law of Florida, the place of the accident, controlled, and that Florida's statute of repose barred plaintiff's suit. Plaintiff responded that Michigan, not Florida, law governed the question of the timeliness of the lawsuit in the federal court. The district court, relying upon *Hampshire v. Ford Motor Co.*, 155 Mich.App. 143, 399 N.W.2d 36 (1986), *lv. denied*, 428 Mich. 852 (1987), determined that Florida law was controlling and that its statute of repose, as substantive law, barred plaintiff's products liability action.[2] This appeal followed.

The sole issue before us is whether Michigan's choice-of-law rules would require that Florida's statute of repose be applied in favor of a Michigan manufacturer, thus barring plaintiff's products liability claim.

## II.

▮ It is elemental that when jurisdiction is based on diversity of citizenship, a federal court must apply the choice-of-law rules of the state in which it sits. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

Since plaintiff's action was brought in the United States District Court for the Eastern District of Michigan, Michigan choice-of-law rules apply.

Prior to 1982, Michigan courts, in deciding choice-of-law issues, applied the substantive law of the jurisdiction where the wrong occurred, the so-called *lex loci delicti* rule. *Abendschein v. Farrell*, 382 Mich. 510, 170 N.W.2d 137 (1969). However, in *Sexton v. Ryder Truck Rental, Inc.*, 413 Mich. 406, 320 N.W.2d 843 (1982), a majority of the court, speaking through multiple opinions, was critical of the rigidities of *lex loci* and abandoned it as an absolute rule.[3] *Sexton, supra*, at 433, 320 N.W.2d 843. Unfortunately, the Michigan court, having jettisoned *lex loci*, declined to adopt any other specific choice-of-law methodology and, instead, left choice-of-law issues to be evaluated on a case-by-case basis. *Id.* at 433, 320 N.W.2d 843. The lead opinion in *Sexton*, signed by three of the seven justices, concluded that *lex fori*, the law of the forum, rather than *lex loci*, the law of the place of the wrong, applied when Michigan residents, or corporations doing business in Michigan, were involved in an accident in another state and appeared as plaintiffs or defendants in a tort action in Michigan courts. 413 Mich. at 439, 320 N.W.2d 843.

A concurring opinion, also signed by three justices, including a justice who had signed the lead opinion, found it insignificant in *Sexton* that the accident had not occurred in Michigan and reasoned that Michigan law should apply since "[t]he status of ownership giving rise to the legal consequence of liability has been regulated

---

1. Florida's statute of repose was amended effective October 1, 1986. The amendment abolished the period of repose in product liability actions. The amendment was not made retroactive. *Melendez v. Dreis & Krump Mfg. Co.*, 515 So.2d 735 (1987).

2. The district court also held that even if Florida's statute of repose was considered procedural law, Michigan's borrowing statute, M.C.L. § 600.5861, would require that Florida's statute of repose be applied. Since both parties on appeal agree that the statute of repose is substantive law and the *Olmstead* analysis controls, we do not address the troublesome questions

whether the Florida statute of repose is a statute of limitations for purposes of Michigan's borrowing statute or whether under Michigan's borrowing statute a cause of action can accrue in a state, such as Florida, where the suit would be barred.

3. The author was a member of the Michigan Supreme Court when *Sexton* was decided and dissented in the case, finding no reason to abandon the rule of *lex loci delicti* as set forth in *Abendschein v. Farrell*, 382 Mich. 510, 170 N.W.2d 137 (1969). The chief justice concurred in the dissent. *Sexton, supra*, 413 Mich. at 443, 320 N.W.2d 843.

in Michigan by [the owners' liability statutes]." 413 Mich. at 440–41, 320 N.W.2d 843.[4]

The justice who concurred in both the lead opinion and the concurring opinion wrote still a third opinion, to which no other justice subscribed, undertaking to explain the lead and concurring opinions, and expressing the view that Michigan courts should apply Michigan law in all personal injury or property damage actions brought in Michigan unless there is a compelling reason to apply the law of a foreign jurisdiction. 413 Mich. at 442, 320 N.W.2d 843. None of the opinions in *Sexton* garnered the signatures of a majority of the seven justices.

Five years later, in *Olmstead v. Anderson*, 428 Mich. 1, 400 N.W.2d 292 (1987), the Michigan Supreme Court, which by then included six justices who were not seated when *Sexton* was decided, attempted to clarify the decision in *Sexton*. *Olmstead* involved a Minnesota plaintiff suing a Michigan defendant for injuries suffered in a Wisconsin automobile accident.

The court noted that *Sexton*'s plurality lead opinion had proven difficult for Michigan and federal courts to apply in that some courts construed *Sexton* to hold that *lex fori* only applied to personal injury actions where the parties were residents of Michigan, while other courts understood *Sexton* to require a weighing of the interests of the involved states to determine which state had the greater interest in having its law applied. *Olmstead, supra,* at 22, 400 N.W.2d 292. The *Olmstead* court noted that the interest-weighing approach to determining what law to apply in choice-of-law cases appeared to be the tack taken by a majority of courts that had attempted to apply *Sexton,* and also appeared to reflect "the trend." *Id.*

After formulating a few generalizations from *Sexton,* the *Olmstead* court declared that, consistent with the policy of *Sexton, lex fori* rather than *lex loci* is the presumptive rule of thumb for choice of law issues in tort cases, but that the issue must be decided on a case-by-case basis. The question to be answered in each case is:

> [W]hether [the] case [at hand] presents a situation in which reason requires that foreign law supersede the law of this state.

*Id.* at 24, 400 N.W.2d 292.

The *Olmstead* court's answer to that question was as follows:

> [Since] Wisconsin has no interest in seeing its law applied, we see no rational reason to displace Michigan law in this case. Since there is no reason to apply Wisconsin law, it is, therefore unnecessary to undertake an analysis of the interests of Michigan.
>
> . . . .
>
> However, in another case in which the state of injury does have an interest in having its law applied, such an analysis might be necessary and proper.

*Id.* at 29–30, 400 N.W.2d 292.

Unlike the situation in this case, since *Olmstead* involved a non-Michigan plaintiff suing a Michigan defendant for damages suffered in a Wisconsin accident, the *lex loci* jurisdiction was not the place of residence of either party. In this case, to repeat, a Florida resident is suing a Michigan defendant for damages suffered in a Florida accident. However, we are satisfied that those differences do not affect the analysis that must govern our decision whether Florida or Michigan law applies in this case.

## III.

It is perhaps worth noting, if indeed elemental, that a federal court in a diversity action is obligated to apply the law it believes the highest court of the state would apply if it were faced with the issue. *Tennessee River Pulp & Paper Co. v. Eichleay Corp.,* 708 F.2d 1055, 1057 (6th Cir.1983). We think it is very clear from the lengthy discussion in *Olmstead* that the Michigan Supreme Court would hold, in

---

**4.** The issue in the two consolidated cases in *Sexton* was whether Michigan's motor vehicle and aircraft owners' liability statutes applied and, therefore, imposed liability on the defendant-owners of the vehicles for the negligent acts of the operators.

a suit brought in a Michigan court by a party who is not a citizen of Michigan against a Michigan resident, arising out of an accident that occurred outside of Michigan and in the state of the plaintiff's residence, that Michigan law as the forum law presumptively controls the litigation; and further, that there must be a rational reason to displace Michigan law. To determine whether there is such a rational reason, a court's first duty is to examine the foreign state's interest, if any, in having its law applied. If there is no reason to apply the foreign state's law, there is no need to undertake an analysis of Michigan's interests. *Olmstead*, 428 Mich. at 30, 400 N.W.2d 292. Only where the foreign state is found to have an interest in having its law applied does an analysis of Michigan's interests become necessary. *Id.* at 30, 400 N.W.2d 292. Absent a finding of some interest on the part of the foreign state, there is no occasion to examine Michigan's interest and the presumption that Michigan applies is controlling.

The *Olmstead* court noted that regardless of whether the foreign law sought to be applied is the law of the state where the wrong occurred or the law of the state of plaintiff's residence, the analysis will be the same. *Id.* at 29 n. 12, 400 N.W.2d 292. However, the court failed to mention whether the analysis would be the same if the state of plaintiff's residence is also the state where the wrong occurred, the circumstances of the present case. The point is problematic because the *Olmstead* court distinguished the facts of that case from a number of post-*Sexton* cases brought in Michigan by nonresident plaintiffs whose injuries occurred in states other than where the plaintiffs resided or had substantial contacts and whose contacts with Michigan "could be described as neither fleeting nor fortuitous." 428 Mich. at 23, 400 N.W.2d 292. In such cases, the court noted, lower courts had usually applied *lex loci delicti*, the place of the wrong, rule. *Id.*

Despite this problem, we believe the court in *Olmstead* intended to set forth a general rule for conflicts-of-law issues. Thus, we presume the Michigan court, if presented with the facts before us, would

hold that even where plaintiff's injury occurred in the state where plaintiff resides, the same interest-analysis approach would apply. Therefore, we assume that Michigan law applies unless it appears that Florida has an interest in its law being applied and, if it has, such interest is sufficient that "reason" requires that the Florida statute of repose "displace" the law of the forum. *Olmstead*, 413 Mich. at 24, 400 N.W.2d 292.

As the *Olmstead* court noted, where the defendant is a citizen of Michigan he cannot argue that the application of Michigan law would defeat his expectations. *Id.* at 27, 400 N.W.2d 292. Similarly, where neither party is a citizen of the state where the wrong occurred, that state has no interest in the litigation unless the issue is one involving conduct as opposed to compensation. *Id.* at 29, 400 N.W.2d 292. Moreover, where the statute is designed to protect local interests, there is no reason to extend its benefits to a nonresident whose state has no similar statute. *Id.* at 29, 400 N.W.2d 292.

## IV.

The district court, in granting defendants' motion to dismiss, found the pre-*Olmstead* case of *Hampshire v. Ford Motor Co.*, 155 Mich.App. 143, 399 N.W.2d 36 (1986), *lv. denied*, 428 Mich. 852 (1987), controlling, largely because it found the facts presented in *Hampshire* were "virtually identical" to the facts in the instant case.

In *Hampshire*, the plaintiff, a California resident, was seriously injured in California when the car he was driving was struck head-on by a stolen vehicle. The plaintiff brought an action in Michigan against the stolen vehicle's manufacturer, defendant Ford Motor Company, alleging that Ford negligently designed the ignition-locking system because it failed to operate as an anti-theft device. 155 Mich.App. at 145, 399 N.W.2d 36. The *Hampshire* court held that pursuant to *Sexton, supra*, a comparison of each jurisdiction's interests in having its law govern was required. 155 Mich.

App. at 146, 399 N.W.2d 36. The court concluded that California's interest was comparatively greater since the plaintiff resided in California, the accident occurred there, the vehicle was registered and licensed in that state, and the sole connections to Michigan were that the defendant's headquarters was there and the action was filed in that state. As a result, the court applied the California substantive law. 155 Mich.App. at 147, 399 N.W.2d 36. The court also noted that the plaintiff did not object to the application of California law at the hearing on the defendant's motion for summary judgment. *Id.*

The plaintiff insists that the Michigan Supreme Court, in *Olmstead*, overruled *Hampshire*. We do not necessarily agree, but we need not address that matter because we are satisfied that, on the facts before us, we need not make a comparative analysis of the interests of Michigan and the foreign state as was done in *Hampshire*.

Under the *Olmstead* formula, the first step is to determine what interest, if any, the foreign state has in having its law applied, and only if Florida has an interest of some kind will Michigan's interest in having its law applied be examined. Moreover, should we reach the comparative interest-analysis step, *Olmstead* requires consideration of more factors than merely the plaintiff's residence, the place of the wrong, and the connections with the forum state, as suggested by defendants in reliance on *Hampshire*. It also requires consideration whether the foreign law sought to be applied will benefit the interests it was designed to protect. *Olmstead*, 428 Mich. at 28–29, 400 N.W.2d 292.

## V.

■ The Florida statute of repose in effect at the time of plaintiff's accident provides:

Actions for products liability ... must be begun within the period prescribed by this chapter ... *but in any event within twelve years after the date of delivery of the completed product to its original purchaser* ..., regardless of the date the defect in the product ... was or should have been discovered.

(Emphasis added.) Although legislative history concerning the statute is scarce, it was presumably designed to protect Florida manufacturers from liability for injuries caused by products which had been on the market for over twelve years. 11 Nova L.J. 849, 852 (1987).[5]

Defendant argues that Florida's statute of repose applies because Florida is where plaintiff resides, the vehicle was licensed, the accident occurred, and the injuries sustained. Moreover, defendant points out that it does business in Florida. However, if applied, the Florida statute of repose would not benefit the interest it was designed to protect. Instead of protecting a Florida manufacturer as intended, the statute of repose would protect an out-of-state manufacturer at the expense of a Florida resident.

Plainly, the Florida statute does not benefit plaintiff, a Florida resident, under the circumstances of this case since the statute would bar her action against a nonresident defendant whose own state law, the law of Michigan, affords no similar protection for a manufacturer. *Olmstead, supra*, at 29, 400 N.W.2d 292. Further, defendants cannot argue that applying Michigan law would defeat their expectations since the individual defendants reside there and defendant Ford Motor Company has its headquarters in that state. *Olmstead, supra*, at 27, 400 N.W.2d 292. Thus, there is simply no reason to extend the benefits of the Florida statute of repose to the Michigan defendants. Since Florida has no interest in having its statute of repose applied, Michigan law applies without regard to the nature or quality of Michigan's inter-

---

**5.** Notably, it was not until the Florida Supreme Court answered a certified question in *Pullum v. Cincinnati Inc.,* 476 So.2d 657, 659 (1985), that the Florida statute of repose was upheld as constitutional even if it barred access to the courts. The statute of repose was amended by the legislature the following year and reference to product liability claims was deleted. 11 Nova L.J. 849, 859 (1987).

ests. *Olmstead, supra,* at 30, 400 N.W.2d 292.

We hold, therefore, that since there is no rational reason to displace Michigan law, the presumptive *lex fori* rule directs that Michigan law governs the case.

The judgment of the district court is REVERSED and the case is REMANDED for further proceedings.