In re **KOREAN AIR LINES DISASTER OF SEPTEMBER 1, 1983.**

Richard A. **BOWDEN,** Dorothy Jones, Willie N. James, Daisy E. Bickel, Charles E. Fonville, and Estate of Margaret Zarif **(companion cases),** Plaintiffs,

v.

**KOREAN AIR LINES CO., LTD.,** Defendant.

**MDL No. 565.**
Civ. A. Nos. 84–79292–BC, 83–73846–DT, 83–75076–DT, 84–74076–DT, 84–74238–DT and 83–73777–DT.

United States District Court, E.D. Michigan, S.D.

Jan. 7, 1993.

See also 814 F.Supp. 599, 814 F.Supp. 605, 146 F.R.D. 61.

David William Potts, Carson Fischer and Potts, Birmingham, MI, for Bowden.

Michael S. Mazur, Chambers, Steiner, Mazur, Ornstein & Amlin, Detroit, MI, for James.

Kevin Mosley, Bailey & Broder, New York City, for Bickel.

Gerald E. Thurswell, Thurswell, Chayet & Weiner, Southfield, MI, for Zarif.

L.S. Charfoos, Charfoos and Christensen, Detroit, MI, for Jones.

Timothy J. Currier, Beier Howlett, Bloomfield Hills, MI, for Bickel.

Charles E. Fonville, pro se.

Robert R. Florka, Florka and Jukowski, Bloomfield Hills, MI, George N. Tompkins, Jr., Condon & Forsyth, New York City, for defendant.

## MEMORANDUM OPINION AND ORDER

ANNA DIGGS TAYLOR, District Judge.

This litigation arises from the crash of Korean Air Lines Flight KE 007, bound from New York to Seoul, South Korea, in the sea of Japan on September 1, 1983, after it had been attacked by Soviet aircraft. Plaintiffs here are the personal representatives of the six Michigan passengers who, among the total of 269 persons aboard, lost their lives. Plaintiffs filed these wrongful death actions in the Eastern District of Michigan, with jury demands, and the cases were transferred by the Panel on Multidistrict Litigation to the United States District Court for the District of Columbia, Chief Judge Aubrey Robinson, for consolidated trial with all others resulting from the crash, on the issue of liability. *In re Korean Air Lines Disaster of September 1, 1983*, MDL Docket No. 565., Nos. 83–2793, *et al.*

Chief Judge Robinson denied defendant's pre-trial motion to strike plaintiff's jury demands. *In re Korean Air Lines Disaster of September 1, 1983*, 704 F.Supp. 1135 (D.D.C. 1988), *modified*, 932 F.2d 1475 (D.C.Cir.1991) ("*Korean I*"). He tried the consolidated case to a jury, which rendered a verdict for plaintiffs on liability and awarded $50 million in punitive damages for "willful misconduct" as described in the Warsaw Convention, further discussed below.[1] The jury verdict was appealed by defendant on the questions of sufficiency of the evidence for a finding of willful misconduct and the availability of punitive damages. The question of whether the case should have been submitted to a jury at all was not appealed. The Court of Appeals for the District of Columbia vacated the jury award of punitive damages, holding that such damages are not available under the Warsaw Convention, which it found to be the controlling, if not exclusive, law applicable. *In re Korean Air Lines Disaster of September 1, 1983*, 932 F.2d 1475 (D.C.Cir.1991) ("*Korean*

---

1. *Convention for Unification of Certain Rules Relating to International Transportation by Air*, October 12, 1929, 49 Stat. 3000, T.S. No. 876 (1934), *reprinted in* note following 49 U.S.C.App. § 1502 (hereinafter Warsaw Convention or Convention).

*II"*). It held, however, that the evidence was sufficient to support a finding of willful misconduct. Petitions for writs of certiorari by both sides were denied by the United States Supreme Court on December 2, 1991. *Dooley v. Korean Air Lines Co.,* — U.S. —, 112 S.Ct. 616, 116 L.Ed.2d 638 (1991). As the issues of liability applicable to all cases have been determined, including that of defendant's willful misconduct, which removes the usual $75,000 limit of damages available to victims of international airline crashes pursuant to Article 25 of the Warsaw Convention, these cases have now been returned by the Panel on Multidistrict Litigation to their original courts for trial on the question of damages.

Defendant has filed a number of related pretrial motions in this court as to the law applicable to the trial which now must be conducted. They include:

1. A motion to strike plaintiffs' jury demand on the issue of damages.

2. A motion for determination that the governing law, the Death on the High Seas Act, 46 U.S.C. § 761 *et seq.* ("DOSHA"), requires that damage awards be limited to the pecuniary losses of the survivors.

3. A motion for partial summary judgment against the claim of passenger Chambers' survivors, who have acknowledged they have no claims for pecuniary loss.

4. A motion for partial summary judgment on plaintiffs' claims of damages for the pre-death pain and suffering of the decedent passengers.

5. A motion to preclude the testimony of two designated experts as to the predeath suffering of the decedents.

6. A motion to preclude any reference at trial to the prior jury's finding of willfulness.

Although this Circuit has not yet considered many of the vexing questions ably raised here, the thoughtful opinions of the Judges of the Court of Appeals for the District of Columbia in *Korean I,* and of the Second Circuit Court of Appeals in *In re Air Disaster at Lockerbie,* 928 F.2d 1267 (2d Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 331, 116 L.Ed.2d 272 (1991), decided a few months prior, have provided substantial guidance to this court. For the reasons outlined below, each of these motions must be denied, except for the last.

**I. MOTION TO STRIKE PLAINTIFFS' JURY DEMAND AS TO DETERMINATION OF DAMAGES.**

■ The court must note at the outset that plaintiffs filed demands for jury trial of these cases with their complaints. After the cases were bifurcated, consolidated, and transferred to the D.C. District by the MDL Panel, Chief Judge Robinson denied defendant's motion to strike the jury demands in the cases, tried the cases to a jury, and defendant did not appeal that decision. *See* Judge Robinson's decision in *Korean I.* The present motion, although characterized as a motion to strike the "demand as to determination of damages", is but a second motion to strike the demands of the original complaints. The forthcoming trial as to damages is not a new action. Therefore, defendant has waived this objection if in fact it is a valid one. The right to jury has been granted and that decision was not appealed.

■ Also, the right to trial by jury has become the law of this case, by virtue of Judge Robinson's decisions in *Korean I,* as well as in *Korean II, cited in In re Korean Air Lines Disaster of September 1, 1983,* 807 F.Supp. 1073, 1079 (S.D.N.Y.1992) ("*Korean III* "). His decision has subsequently been denoted the law of the case by other transferor district courts in *Yun v. Korean Airlines Co.,* 798 F.Supp. 755 (E.D.N.Y.1992), *Park v. Korean Air Lines,* No. 83 Civ 7900, 1992 WL 331092 (S.D.N.Y.1992), and in *Korean III,* as well. In affirming the jury verdict as to willful misconduct, moreover, the Court of Appeals for the District of Columbia implicitly affirmed Judge Robinson's submission of the case to a jury, although the question had not been raised by defendant. That court wrote, in *Korean II,* 932 F.2d at 1481:

When "questions [of willful misconduct] depend upon inferences to be drawn from essentially circumstantial evidence ...

[o]ne can hardly imagine a clearer case in which such questions should have been left to the jury." *Berner v. British Commonwealth Pacific Airlines,* 346 F.2d 532, 538 (2d Cir.1965) (reversing JNOV for plaintiffs in an air crash case), *cert. denied* 382 U.S. 983, 86 S.Ct. 559, 15 L.Ed.2d 472 (1966).

Throughout its careful analysis of the district court's evidentiary rulings, the potential unfair prejudice of presentation of certain matters to the jury, the jury instructions, and in its conclusions that there was sufficient evidence from which a reasonable jury, contrary to defendant's arguments, could find that willful misconduct had occurred, the D.C.Circuit never raised the hint of a doubt that the case was one triable to a jury, as a matter of law. It's affirmation of the jury finding and of the district court's refusal to grant JNOV constitute an affirmation that the governing law had indeed entitled plaintiffs to trial by jury in the first place.

■ The governing law must nevertheless be examined, and such an examination at the outset is necessary to a decision of any of these motions. In that regard this court is persuaded that the questions raised here are governed by the terms of the Warsaw Convention, *supra.* The Convention is a multilateral treaty which the Congress of the United States ratified in 1934, and which constitutes the supreme law of the land in the matters upon which it touches. To the extent its terms, policies, and purposes conflict or would be defeated by the Death on the High Seas Act of 1920, it supersedes that Act. The Warsaw Convention established the liability of international air carriers for harm to passengers and goods, fixed limitations on that liability and attempted to provide as much uniformity and predictability in procedures and substantive law to which both carriers and their passengers must submit in case of accident, as possible.

The Court of Appeals for the District of Columbia wrote that:

The central purpose of the Convention is to limit the liability of air carriers. The contracting states in 1929 believed that limitations on liability would promote the development of the fledgling commercial air industry by allowing the airlines to predict their exposure to monetary damages and thereby obtain needed capital and adequate insurance coverage. *See Eastern Airlines v. Floyd,* —— U.S. ——, ——, 111 S.Ct. 1489, 1499–1500, 113 L.Ed.2d 569 (1991) ("*Floyd II* "); *Lockerbie,* 928 F.2d at 1270–71. . . .

*Korean II,* 932 F.2d at 1484.

Article 17 of the Convention provides that:

"The carrier shall be liable for damages sustained in the event of the death or wounding of a passenger or any other bodily injury suffered by a passenger. . . ."

■ Article 24 allows the contracting states to determine the standing and "respective rights" of claimants under Article 17, "subject to the limitations of the Convention"; and Article 25 provides that the limitation of a carrier's liability is lost when the damage sustained by a claimant is due to the carrier's "willful misconduct" as defined by the law of the forum. The Convention had initially limited carrier liability to $8,300 at Article 22(1), but has been superseded by the Montreal Agreement[2] among air carriers which was approved by the U.S. Civil Aeronautics Board in 1966 and lifted the carrier liability limit to $75,000. The carriers also, in the Montreal Agreement, assumed virtual strict liability and waived the due care defenses of Convention Article 20(1). The scheme presented by the Warsaw Convention has been analogized to that of the workers' compensation laws of this country. *Korean II,* 932 F.2d at 1494, *citing* 2A Larson, Workmen's Compensation Law § 65.11, 12–9 (1990). In short, the representatives of passengers need not prove negligence, but are subject to limitation of recovery *unless* a finding of willful misconduct is made, as has been in this case.

---

**2.** *Agreement Relating to Liability Limitations of the Warsaw Convention and Hague Protocol,* CAB Agreement 18900, note following 49 U.S.C.App. § 1502 (approved by CAB Order E–23680, May 13, 1966 (Docket 17325) (1966), 31 Fed.Reg. 7302), and *reprinted in* Civil Aeronautics Board, Aeronautical Statutes and Related Material 515–16 (1974).

The question of the right to jury trial appears to be one of the "respective rights" which Article 24 of the Convention refers to the contracting states. In this country, the question becomes whether federal or state common law governs, and this court is persuaded by the *Lockerbie* analysis that federal law must control. The drafters of the Convention sought to provide the maximum possible uniformity of result possible and contemplated a Convention adopted and enforced by nation-states, among which our federal system was a rarity. The "states" contemplated were nations, and not each of their sub-states, each of which has developed an independent "patchwork" of common law. The *Lockerbie* opinion points to the minority of states, including Michigan, whose damage rules would create an unpredictability of liability contrary to the policy, needs, and intentions of the drafters of the Convention. Accordingly, we will look to the federal common law, although trends among states may be helpful, in determining that common law.

Before proceeding further, the court must note its awareness that, although the *Lockerbie* court held the Warsaw Convention to be the exclusive, preemptive law controlling, *Korean II* held only that the forum state law is preempted only to the extent it may be inconsistent with the compensatory scheme of the Convention. This court agrees that no more need be decided here, as well.

In 1934 in America, the common law, both state and federal, from the time of the English common law, had provided a trial by jury in actions at law for damages. The 7th Amendment guarantees that right. Defendant argues that DOHSA prohibits trial by jury because this court must sit in admiralty. Assuming that DOHSA does so require, however, its application would defeat the goal of uniformity of the Warsaw Convention, as American Warsaw cases of crashes at sea would be treated differently from identical crashes on land. Moreover, the subsequent Convention supersedes DOHSA, as stated above, so one must look further, considering DOHSA as only one example of the state of American law at the adoption of the Convention. Both the Federal Employers' Liability Act (45 U.S.C. § 51 *et seq.*) and the Jones Act (46 App. U.S.C. § 688 (West Supp.1992)) contemplate jury trials in negligence, survival, and wrongful death cases for railroad employees and seamen, respectively. Chief Judge Robinson also, in *Korean I,* noted that the Supreme Court had approved the hearing of all claims a seaman might have in both law and admiralty in a single trial to a jury. *See Korean I,* 704 F.Supp. at 1153, *citing Fitzgerald v. U.S. Lines Co.,* 374 U.S. 16, 83 S.Ct. 1646, 10 L.Ed.2d 720 (1963); *see also Moragne v. States Marine Lines, Inc.,* 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970). Again, in *In re Air Crash Disaster Near Honolulu, Hawaii,* 783 F.Supp. 1261, 1265 (N.D.Calif.1992), claims under the Warsaw Convention were held triable by a jury. Finally, in *In re Air Crash Disaster in the Ionian Sea,* MDL Docket No. 229, No. —— Civ ——, 1979 WL 2973 (S.D.N.Y. April 10, 1979), both DOHSA and Warsaw Convention claims were tried to a jury.

The federal common law, in short, does not require that this court strike plaintiffs' demand for jury trial.

## II. DEFENDANT'S MOTION FOR A DETERMINATION THAT THE DOHSA LIMITS PLAINTIFFS' DAMAGES TO PECUNIARY LOSSES.

This motion is premised, as was the motion for a non-jury trial, upon the argument that the DOHSA controls the remedy available to plaintiffs here, because of its applicability to aircraft accidents over the high seas. *Offshore Logistics, Inc. v. Tallentire,* 477 U.S. 207, 106 S.Ct. 2485, 91 L.Ed.2d 174 (1986). That act provides that plaintiffs may recover only their pecuniary losses resulting from passenger deaths.

This court has already held, however, that to the extent the later Warsaw Convention conflicts with this Act, it controls. The Warsaw Convention contains no such limitation, and its purpose and policy of uniformity of liability worldwide would be thwarted indeed if compensation for American victims falling into the sea were adjudicated with such disparity to those who crashed on land.

In *Air France v. Saks,* 470 U.S. 392, 105 S.Ct. 1338, 84 L.Ed.2d 289 (1985), the Su-

preme Court instructed the lower courts to seek the intentions of the drafters of the Warsaw Convention by considering that the document was written by Continental Jurists, trained in the civil law, and writing in French. The "dommage survenu", or damage sustained, which they contracted to make compensable, consisted in French civil law of both "dommage materiel", or pecuniary, and "dommage moral", or moral and non pecuniary damage. The D.C.Circuit held that both are compensable, under the Convention. *Korean II*, 932 F.2d at 1487. Although the Convention is silent as to the elements of moral damages, if we are to give it a meaning consistent with the shared intentions of the parties, we must interpret compensation to include nonpecuniary damages. This motion is, therefore, denied.

## III. DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST THE CHAMBERS SURVIVORS' CLAIMS, AS THEY HAVE ACKNOWLEDGED HAVING NO PECUNIARY LOSSES.

This motion is denied for the reasons stated in denying the previous motion. The Convention clearly contemplates awards for non-pecuniary damages and supersedes the DOHSA.

## IV. DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFFS' CLAIMS FOR THE PASSENGERS' PRE-DEATH PAIN AND SUFFERING.

Although it is difficult to ascertain precisely what moral damages may be awarded, one must start by noting that the Supreme Court has held that none are available for mental anguish absent physical injury. *Eastern Airlines v. Floyd*, —— U.S. ——, 111 S.Ct. 1489, 113 L.Ed.2d 569 (1991). In that case, the passengers sued for anguish suffered when their flight had narrowly avoided crashing. This case, unfortunately, is vastly different. The evidence apparently has suggested that the 269 persons aboard the plane were alive and conscious for a substantial time (approximately 10 or 11 minutes after it was hit by a missile and before it hit the sea and possibly for a period thereaf-

ter). Moreover, warning shots and flares had been fired at it by the Soviets before the final destructive missile. Their conscious suffering during that period, both emotional and physical (due to rapid decompression), which ended in the death they were each anticipating, was likely considerable. This is pain and suffering accompanied by physical injury, and logically, must be permitted by *Floyd*. In *In re Flight Explosion on Trans World Airlines, Inc.*, 778 F.Supp. 625 (E.D.N.Y.1991), *rev'd sub nom on other grounds, Ospina v. Trans World Airlines, Inc.*, 975 F.2d 35 (2d Cir.1992), a terrorist attack caused conscious pre-death pain and suffering on the passengers and recovery was permitted as within the terms of "dommage survenu" of the Warsaw Convention. Similarly, *In re Air Crash Disaster Near Honolulu, Hawaii*, permitted recovery for the pre-death pain and suffering of decedents. The motion to deny such damages is denied.

## V. DEFENDANT'S MOTION TO PRECLUDE THE TESTIMONY OF EXPERTS EDZY AND FOODY.

This motion is denied, as the expertise of these witnesses, if it is as represented in pleadings, cannot be gainsaid on the issue of pre-death pain and suffering, and that issue is one on which plaintiffs are entitled to present evidence.

## VI. MOTION TO PRECLUDE REFERENCE TO THE PRIOR FINDING OF WILLFULNESS.

This motion is granted, in that plaintiffs are precluded from using the term "willful misconduct" to the jury. They must, however, be permitted to explain to the jury the basis upon which we are all here. Moreover, the *facts* which the D.C.Circuit found sufficient to support a verdict of "willful misconduct" should be made a part of that basis. They are highly relevant to the decedents' pre-death pain and suffering as well as to the anguish of their survivors, and need not be *reproved* here. A stipulation as to what plaintiffs may say as to the facts found to have led to this crash in openings as well as closings is ordered submitted to the court by January 15, 1993. If the parties cannot stipulate, each side shall submit its proposal to

the court on that date. Plaintiffs, if such is the fact, are entitled to present evidence that defendant's actions may have exacerbated plaintiffs' personal grief and mental anguish at the loss of the passengers, which must of course be grief *resulting in physical damage.* They may not recover from their grief which did *not* result in physical effects, however. *See Floyd,* —— U.S. at ——, 111 S.Ct. at 1502. Their moral dommage survenu, to be compensable, must include physical manifestations. To demonstrate a nexus between the accident, the extremity of the grief, and the manifestations claimed, plaintiffs must be permitted to make a showing of the additional shock caused by the conduct of the carrier.

Also, it should be stated here that the court will not permit hedonic damages for the quality of the decedents' lives, had they continued. ("Loss of the quality or enjoyment of life is not a claim that has typically survived the victim in cases other than Civil Rights cases...." *Korean III,* 807 F.Supp. at 1083.) The pecuniary damages available in accordance with the standards enumerated in DOHSA cases will also of course, be provided. The court will not permit recovery of decedents' lost wages, because such would result in a double award to survivors who may claim loss of support, loss of society, lost inheritance, lost services, and love and affection.[3]

Finally, one plaintiff has requested that the court apply Korean law to its case. That motion is denied, for all of the reasons discussed above concerning applicable law. This court, sitting on a case involving injury to American nationals on a flight originating in this country by an airline permitted to operate here, finds that the paramount governmental interest to be served in these proceedings is that of the United States, and will apply federal common law.

SO ORDERED.

---

3. *See Korean III,* 807 F.Supp. at 1087, *citing Korean II, Lockerbie, In re Air Crash Disaster Near New Orleans, LA,* 789 F.2d 1092 (5th Cir. 1986), *vacated on other grounds,* 490 U.S. 1032, 109 S.Ct. 1928, 104 L.Ed.2d 400 (1989), *Calda-* *rera v. Eastern Airlines, Inc.,* 705 F.2d 778 (5th Cir.1983), and *Winbourne v. Eastern Airlines, Inc.,* 758 F.2d 1016 (5th Cir.1984), *cert. denied,* 474 U.S. 1036, 106 S.Ct. 603, 88 L.Ed.2d 582 (1985).