Diane KEMP, Personal Representative of the Estate of Terrance Clay Kemp, Deceased, and Diane Kemp, Individually, Plaintiff,

v.

PFIZER, INC., a foreign corporation, and Shiley, Inc., a foreign corporation, jointly and severally, Defendants.

Civil Action No. 92–40591.

United States District Court, E.D. Michigan, Southern Division.

Dec. 4, 1996.

David D. Patton (P22846), James A. Reynolds, Jr. (P39826), David D. Patton & Associates, P.C., Bloomfield Hills, MI, Mark R. Granzotto (P31492), Mark R. Granzotto, P.C., Detroit, MI, for Plaintiff.

Richard C. Sanders (P25210), Kevin S. Hendrick (P30710), Clark Hill P.L.C., Detroit, MI, Steven Glickstein, David Klingsberg, Lori B. Leskin, Kay, Scholer, Fierman, Hays & Handler, LLP, New York City, for Defendants.

## MEMORANDUM OPINION AND ORDER

GADOLA, District Judge.

Before the court is the defendants' motion for summary judgment, pursuant to Federal Rule of Civil Procedure 56, filed on September 25, 1996. The defendants seek to dismiss, as a matter of law, plaintiff's claims for punitive and exemplary damages set forth in Counts XVI and XVII of the Amended Complaint, and plaintiff's claims for hedonic damages set forth in plaintiff's damage report. Pursuant to Local Rule 7.1(e)(2) (E.D.Mich. January 1, 1992), this court will dispense with oral argument and decide this motion on the submissions of the parties.

### I. Background

This litigation is brought on behalf of the Estate of Terrance Clay Kemp, a deceased heart valve recipient, and his surviving spouse, Diane Kemp ("Plaintiff") who is also the personal representative of the estate of her deceased husband. The defendants, Pfizer, Inc. and Shiley, Inc., ("Defendants") manufactured the heart valve[1] which was surgically implanted in Mr. Kemp on or about June 22, 1982 at the University of Michigan Hospital in Ann Arbor, Michigan. On July 29, 1986, while Mr. Kemp was on a business trip in Oklahoma, he experienced severe chest pains and within four hours thereafter died. The cause of death was the failure of the heart valve. The heart valve in question was designed, manufactured and tested in the State of California. Defendant Shiley is incorporated and has its principal place of business in California. Both defendants do business in Michigan.

This court had previously dismissed all of plaintiff's state law tort claims, including the claims for punitive, exemplary and hedonic damages. *Kemp v. Pfizer, Inc.*, 851 F.Supp. 269, 276 n. 5 (E.D.Mich.1994). In so doing, this court addressed only issues of liability and did not reach defendants' summary judgment motion addressed specifically to the damages claims. *Id.* Because the Sixth Circuit vacated that judgment in light of the Supreme Court's decision in *Medtronic, Inc. v. Lohr,* —— U.S. ——, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996), the defendants now renew their motion addressed to these specific damages claims.

### II. Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the non-moving party's case on which the non-moving party would bear the burden of proof at trial. *Martin v. Ohio Turnpike Commission,* 968 F.2d 606, 608 (6th Cir.1992).

### III. Analysis

This court will address, in order, the issues of whether plaintiff's claims for punitive, exemplary and hedonic damages should be dismissed.

#### a. Punitive Damages

Because plaintiff concedes that punitive damages are not available under Michigan law, the only issue for this court to decide is whether Michigan law or California law applies to this case.

---

[1]. The subject heart valve is a Bjork–Shiley prosthesis, further identified as a Convexo–Concave Aortic valve bearing serial number 21ABC13776.

■ It is axiomatic that in diversity cases, a federal court must apply the choice-of-law rules of the state in which it sits. *Klaxon v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Mahne v. Ford Motor Co.*, 900 F.2d 83, 85 (6th Cir.), *cert. denied*, 498 U.S. 941, 111 S.Ct. 349, 112 L.Ed.2d 313 (1990). Because this case was originally filed in the Circuit Court for Washtenaw County and subsequently removed to the United States District Court for the Eastern District of Michigan on March 12, 1992, Michigan's choice-of-law rules apply.

The defendants argue that Michigan law, which does not provide for punitive damages, should be applied, while the plaintiffs contend that California law, which does provide for punitive damages, should be applied. As such, there is a "true conflict" of laws.[2] *See In re Disaster at Detroit Metropolitan Airport Aug. 1987*, 750 F.Supp. 793, 800, 807 (E.D.Mich.1989).

■ The defendants contend that Michigan law should apply because *Sexton v. Ryder Truck Rental, Inc.*, 413 Mich. 406, 320 N.W.2d 843 (1982), is controlling. In *Sexton*, the Michigan Supreme Court held that Michigan law must be applied where, as in the instant case, all of the parties are either Michigan residents or doing business within this state. *Id.* at 433, 320 N.W.2d 843. It is not disputed that *Sexton* is factually analogous to this case to the extent that all the parties herein, as in *Sexton*, are residents of Michigan. Moreover, this court notes that the straightforward application of *lex fori* which the defendants urge is, to say the least, enticing given the usual "legal quagmire" associated with a choice-of-law analysis. *See Disaster at Detroit Metropolitan Airport Aug. 1987*, 750 F.Supp. at 795. However, in light of *Olmstead v. Anderson*, 428 Mich. 1, 400 N.W.2d 292 (1987) and *Mahne, supra*, this court cannot read *Sexton* as narrowly as the defendants would have this court do.

Although the *Sexton* court jettisoned *lex loci* as an absolute rule, it declined to adopt any other specific choice-of-law methodology and instead left choice-of-law issues to be evaluated on a case-by-case basis. *Mahne*, 900 F.2d at 85. (citing *Sexton* at 413 Mich. 433, 320 N.W.2d 843). Subsequently, in *Olmstead* the Michigan Supreme Court recognized that both Michigan and federal courts were struggling to glean a clear rule of law from *Sexton*. Particularly, the *Olmstead* court noted that some courts construed *Sexton* to hold that *lex fori* only applied to personal injury actions where the parties were residents of Michigan, as the defendants herein suggest, while other courts understood *Sexton* to require a weighing of the interests of the states involved to determine which state had the greater interest in having its law applied. *Olmstead* 428 Mich. at 22, 400 N.W.2d 292. As the Sixth Circuit in *Mahne* explained "[t]he *Olmstead* court" noted that the interest-weighing approach to determining what law to apply in choice-of-law cases appeared to be the tack taken by a majority of courts that had attempted to apply *Sexton*, and also appeared to reflect "the trend." *Id.*

The *Mahne* court concluded by stating that "we believe the court in *Olmstead* intended to set forth a general rule for conflicts-of-law issues." The general rule that the Sixth Circuit developed from *Sexton* and *Olmstead* was that "*lex fori* rather than *lex loci*" is the presumptive rule of thumb for choice of law issues in tort cases, but that the issue must be decided on a case-by-case basis. The question to be answered in each case is:

> [W]hether [the] case [at hand] presents a situation in which reason requires that foreign law supersede the law of this state.

*Mahne*, 900 F.2d at 86 (quoting *Olmstead* 428 Mich. at 24, 400 N.W.2d 292). As such, the defendants argument that an interest analysis is not required by this court because

---

2. Defendants point out that since punitive damages are not permitted in wrongful death cases under California law, plaintiff can only seek punitive damages on the survival claim. This court notes that for the purpose of a conflicts-of-law

the parties are Michigan residents is rejected.[3]

■ After acknowledging that Michigan law presumptively applies to this case, this court must next determine whether there is a reason to displace Michigan law. To determine whether a case presents a situation in which reason requires that a foreign law supersedes Michigan law, the Sixth Circuit directed that:

> a court's first duty is to examine the foreign state's interest, if any, in having its law applied. If there is no reason to apply the foreign state's law, there is no need to undertake an analysis of Michigan's interests. (citation omitted). Only where the foreign state is found to have an interest in having its law applied does an analysis of Michigan's interests become necessary. (citation omitted) Absent a finding of some interest on the part of the foreign state, there is no occasion to examine Michigan's interest and the presumption that Michigan law applies is controlling.

*Mahne*, 900 F.2d at 87 (citing *Olmstead* 428 Mich. at 30, 400 N.W.2d 292).

*Mahne* and *Olmstead* offer additional guidance on how to apply the interest analysis in this case. Notably, the *Mahne* court stated that "where neither party is a citizen of the state where the wrong occurred, that state has no interest in the litigation unless the issue is one involving conduct as opposed to compensation." *Mahne*, 900 F.2d at 87 (citing *Olmstead* 428 Mich. at 29, 400 N.W.2d 292). Clearly, punitive damages are necessarily directed at controlling conduct. *See Disaster at Detroit Metropolitan Airport Aug. 1987*, 750 F.Supp. at 805 (stating that "the decision by a state on whether to allow punitive damages focuses solely on corporate regulatory versus corporate protective policies."). In *Stangvik v. Shiley, Inc.*, 54 Cal.3d 744, 1 Cal.Rptr.2d 556, 819 P.2d 14 (1991) the California Supreme Court acknowledged that "the likelihood of a substantial recovery against [a heart valve] manufacturer [by imposing punitive damages] strengthens the deterrent effect." *Stangvik*, 54 Cal.3d at 759, 1 Cal.Rptr.2d 556, 819 P.2d 14. It is clear that the law of California, which permits the imposition of punitive damages, is designed to punish its corporate defendants and deter future misconduct. As such, this court finds that California does have an interest in this case.

The defendants, however, contend that the California courts have stated that California has no interest in applying its law. The defendants present some facially persuasive California caselaw which they argue demonstrates that California would deny any interest in having its law apply to non-Californians in this very type of case. *See Stangvik*, 54 Cal.3d at 744, 1 Cal.Rptr.2d 556, 819 P.2d 14; *Shiley Incorporated v. Superior Court*, No. G018428, slip op. at 7–8 (Cal.App. May 24, 1996). However, those cases arose in the *forum non conveniens* context and as such are not very compelling. The California courts were not considering which state's law to apply but rather whether to provide an out-of-state plaintiff a forum in California. As such, the paramount public interest factor implicated was necessarily judicial economy. The California Supreme Court, in *Stangvik*, 54 Cal.3d at 763, 1 Cal.Rptr.2d 556, 819 P.2d 14, stated that:

> The public interest factors clearly favor defendants' position [for a change of forum]. If we hold that the present cases may be tried in California, it will likely mean that the remaining 108 cases involving the Shiley valve will also be tried here. **The burden on the California courts of trying these numerous complex actions is considerable.** Moreover, **California's interest in deterring future improper**

---

analysis, this is a "true conflict" regarding punitive damages.

**3.** The general rule set forth in *Mahne* is supported by language in *Olmstead* which is clearly applicable to the instant action. There, the court stated:

> That is not to say that the state in which the injury takes place will never have an interest in litigation arising out of the injury if none of its citizens are involved. The injury state always has an interest in conduct within its borders, whether or not its citizens are involved.

\*  \*  \*  \*  \*  \*

[I]n [a] case in which the state of injury does have an interest in having its law applied, such an [interest] analysis might be necessary and proper.

*Olmstead*, 428 Mich. at 28, 29, 400 N.W.2d 292.

**conduct by defendants** would be amply vindicated if the actions filed by California resident plaintiffs resulted in judgments in their favor.

It is plain from the above language that the court was concerned about the practical effect of opening the "flood gates" to all "Shiley valve" litigation thereby inundating the California court system. It is also clear that the *Stangvik* court acknowledged that California has an interest in deterring future improper conduct by the defendants although it felt that that interest could be amply vindicated without any additional cases being tried in California. However, it does not necessarily follow that California would not want those interests to be furthered in another forum. In a sense, where California law is applied in another forum, California is getting the best of both worlds—the deterrent effect of applying its own law without having to expend its own judicial resources. Therefore, this court finds that California necessarily has an interest in having its law applied and this is a rational reason to displace the law of Michigan.

However, this does not end this court's inquiry. This court must now look to Michigan's interest, if any, in having its law applied. Plaintiff contends that Michigan's interest is in protecting its citizens and because the plaintiff would receive more rights under California law than under Michigan law, that interest is better served under California law. *See Magnant v. Medtronic,* 818 F.Supp. 204, 207 (W.D.Mich.1993). This argument is unavailing. As stated above the purpose of punitive damages is to deter conduct of corporations within the state. *See Disaster at Detroit Metropolitan Airport Aug. 1987,* 750 F.Supp. at 805. It is not to compensate the plaintiffs. While states "[c]ertainly have an interest in assuring that its claimants are adequately compensated for their injuries[,] . . . . this interest is satiated by an award of compensatory damages." Once its plaintiffs are made whole by the recovery of compensatory damages, the interest of the plaintiff's state of domicile is satisfied. *Id.* (citing cases). Since the plaintiffs herein can become whole under California law, Michigan's interest is satisfied. In effect, there is no conflict of law because both states will compensate the plaintiff.

Defendants, however, properly contend that Michigan does have an interest in protecting corporations that conduct business in Michigan against the imposition of punitive damages.

> The policy, which is reflected in those laws that prohibit an award of punitive damages, is the protection of domiciliary defendants from excessive financial liability. Those states which have refused to impose punitive damages on its defendants have done so in order to promote (1) the financial stability of the businesses that conduct their affairs within its borders, and (2) the overall economic well-being of its citizenry.

*Disaster at Detroit Metropolitan Airport Aug. 1987,* 750 F.Supp. at 805. *See also id.* at 806–07 (stating that "The protection of the financial stability of domiciliary corporations is designed to enhance the economic climate and well being of the state by generating revenues.")

As such, this court is seemingly left in the position of having to quantify which state's interest is greater, an admittedly abstruse exercise. Instead, this court will follow the reasoning of Chief Judge Cook in *Disaster at Detroit Metropolitan Airport Aug. 1987,* 750 F.Supp. at 807–08, and conclude that where "Michigan has a strong interest in applying its laws in order to implement its own policies, the Michigan courts would not displace its own laws in favor of the law of a foreign state." As such, with regard to plaintiff's claim for punitive damages, Michigan's substantive law will apply. Because Michigan law precludes the recovery of punitive damages, the defendants are entitled to summary judgment dismissing plaintiff's claim for punitive damages in Count XVIII of the Amended Complaint.

**b. Exemplary Damages**

Plaintiff asserts a claim for exemplary damages [4] in Count XVII of the Amended

---

4. Exemplary damages are designed to "compensate[] a plaintiff for the 'humiliation, sense of outrage, and indignity' resulting from injuries 'maliciously, wilfully and wantonly' inflicted by

Complaint. Plaintiff, cites several Michigan cases that allegedly support her position that exemplary damages are available in this *wrongful death* action. *See Veselenak v. Smith*, 414 Mich. 567, 327 N.W.2d 261 (1982); *Valentine v. General American Credit*, 420 Mich. 256, 362 N.W.2d 628 (1984); *Ledbetter v. Brown Savings Bank*, 141 Mich.App. 692, 368 N.W.2d 257 (1985). However, none of these cases involve a *wrongful death* claim. It is clear that under Michigan caselaw exemplary damages are not recoverable in a *wrongful death* action. In *Currie v. Fiting*, 375 Mich. 440, 455, 134 N.W.2d 611 (1967), the Michigan Supreme Court stated that "[t]here is no provision in the [Michigan Wrongful Death] statute for an award of exemplary ... damages. None should be awarded.". *See also Fellows v. Superior Products Co.*, 201 Mich.App. 155, 506 N.W.2d 534 (1993), *appeal dismissed*, —— Mich. ——, 512 N.W.2d 315 (1994) (stating "exemplary damages are not recoverable in a wrongful death action."). In addition, at least one federal court that has considered the issue has found that:

> In view of the fact that the Wrongful Death Act contains no provision for recovery for exemplary damages, I am satisfied that plaintiff is not entitled to recover such damages should she ultimately prevail in her action against defendant.

*Bernier v. Board of County Road Commissioners*, 581 F.Supp. 71, 80 (W.D.Mich.1983). As such, this court finds that summary judgment will be granted dismissing the exemplary damages claim set forth in Count XVII of the Amended Complaint.[5]

#### c. Hedonic Damages

■ Although a claim for hedonic damages[6] is not contained in plaintiff's Amended Complaint, they are included in the assessment of total damages set forth in plaintiff's damage report.[7] The defendants argue that plaintiff has no right to recover hedonic damages under the Michigan Wrongful Death Act ("MWDA" or "Act") because 1) they are not expressly authorized under the Act and 2) they are not consistent with the purpose of the Act since hedonic damages are designed to compensate persons for the *conscious* loss of enjoyment of life. Plaintiff, on the other hand, contends that the Act should not be read so narrowly as to preclude the recovery for hedonic damages.

Both parties acknowledge that the Michigan courts have yet to explicitly address the question of whether hedonic damages are available under the MWDA. As such, this court sitting in diversity is obligated to apply the law as it believes the Michigan Supreme Court would apply it if it were faced with the issue. *Tennessee River Pulp & Paper Co. v. Eichleay Corp.*, 708 F.2d 1055, 1057 (6th Cir.1983).

This court must begin with an examination of the actual text of the MWDA. *See United States v. Toti*, 149 B.R. 829 (E.D.Mich.1993) (citing *Pennsylvania Dept. of Public Welfare v. Davenport*, 495 U.S. 552, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990)). M.C.L.A. § 600.2922(6) provides, in relevant part, that:

> In every action under this section the court or jury may award damages as the court or jury shall consider fair and equitable, under all the circumstances including reasonable medical, hospital, funeral, and burial expenses for which the estate is liable; reasonable compensation for the pain and suffering, while conscious, undergone by the deceased person during the period intervening between the time of the injury

---

the defendant. (citation omitted)." *Kewin v. Massachusetts Mutual Life Insurance Co.*, 409 Mich. 401, 419, 295 N.W.2d 50 (1980).

5. It should be noted that plaintiff's representation to this court concerning the availability of exemplary damages in this action borders on frivolity. *See* Fed.R.Civ.P. 11(b)(2). Much like plaintiff conceded that punitive damages are not available under Michigan law, *supra*, plaintiff should have acknowledged the state of existing law in Michigan regarding exemplary damages. If so inclined, plaintiff could have then argued for the extension of that law. However, that was not done. All parties are hereby noticed that any similar conduct in the future will not be countenanced by this court.

6. Hedonic damages are sometimes referred to as damages for the "loss of the pleasures of life and living."

7. Plaintiff claims to be entitled to $2,238,046 in hedonic damages based on a life expectancy of 32.4 years.

and death; and damages for the loss of financial support and the loss of the society and companionship of the deceased.

It is well settled that "statutes in derogation of the common law must be strictly construed." *Steward v. Poole*, 196 Mich.App. 25, 29, 492 N.W.2d 475 (1992), *rev'd on other grounds*, 443 Mich. 863, 503 N.W.2d 76, *reconsideration denied*, 444 Mich. 885, 511 N.W.2d 683 (1993); *accord Charney v. Thomas*, 372 F.2d 97, 99 (6th Cir.1967) (stating that it is a "traditional maxim that statutes in derogation of the common law must be construed narrowly"); *Cotton v. Minter*, 469 F.Supp. 199, 201 (E.D.Mich.1979) (same). Because the MWDA is in derogation of the common law, *see In re Venneman's Estate*, 286 Mich. 368, 372, 282 N.W. 180 (1938), it must be narrowly construed so that only those damages explicitly provided for in the act are recoverable. *See, e.g., Courtney v. Apple*, 345 Mich. 223, 228, 76 N.W.2d 80 (1956) (stating that "[t]he remedy under the death act, above cited, is exclusive, and the recovery of damages is necessarily limited to those specified by the legislature and sustained by proofs.").

Michigan and federal cases addressing the issue of whether exemplary damages are available under the Act are instructive on the issue of whether hedonic damages are available under the Act as neither "exemplary" nor "hedonic" damages are expressly mentioned in the Act. Those cases have found that exemplary damages are not available under the Act. *See, e.g., Currie*, 375 Mich. at 455, 134 N.W.2d 611 (finding that since "[t]here is no provision in the [Michigan Wrongful Death] statute for an award of exemplary ... damages[,] [n]one should be awarded."); *Bernier*, 581 F.Supp. at 80 (stating that "[i]n view of the fact that the Wrongful Death Act contains no provision for recovery for exemplary damages ... plaintiff is not entitled to recover such damages....").

In fact, an even more persuasive argument can be made to preclude hedonic damages than exemplary damages given the language in the Act which expressly restricts recovery to "reasonable compensation for the pain and suffering, while conscious, undergone by the deceased person during the period intervening *between the time of injury and death*." M.C.L.A. § 600.2922(6). This court agrees with the defendants that this language evinces an intent to limit damages to those sustained by the decedent pre-death.

Plaintiff, on the other hand, argues that the statutory language—"fair and equitable under all circumstances ..."—is not meant to be exhaustive and should, instead, be liberally construed to include hedonic damages. However, plaintiff does not direct this court to any Michigan caselaw supporting that assertion. Instead, plaintiff cites to a single unpublished Michigan jury verdict [8] awarding post-death hedonic damages in a wrongful death case. That decision, however, is "not controlling where the highest court of the state has not spoken on the point." *Itrich v. Huron Cement Div. of National Gypsum Co.*, 670 F.Supp. 199, 202–03 (E.D.Mich. 1987). Moreover, it is quite likely, as plaintiff has acknowledged, that other Michigan trial courts have refused to permit post-death hedonic damages.[9]

---

**8.** *Fritzen v. Jackson Asphalt Paving*, Jackson County Circuit Court, No. 91–58733 NO (1991).

**9.** Plaintiff also directs this court to *Falcon v. Memorial Hospital*, 436 Mich. 443, 462 N.W.2d 44 (1990) for the proposition that Michigan recognizes a cause of action for lost chance of survival and that therefore "the Supreme Court was, in effect, acknowledging the ability of a claim to survive the death of the victim." However, *Falcon* is easily distinguishable from this or most any wrongful death case. In *Falcon*, a patient suffered a complication during delivery. Absent any negligence, she would have had a 37.5 percent chance of surviving the complication. However, because of defendants' negli-

gence, she had no chance to survive. Under traditional tort law, plaintiff would not have been able to state a cause of action at all since it was "more probable than not" that she would have died regardless. It is noteworthy that the Court, in allowing plaintiff to recover under these extenuating circumstances nevertheless, limited her recovery to "37.5 percent times the damages recoverable for *wrongful death*." *Id.* at 471, 462 N.W.2d 44 (emphasis added). *Falcon* did not permit post-death hedonic damages. It merely allowed the plaintiff to recover recognized wrongful death damages even though the defendants were less than 50% responsible for her death.

Plaintiff also refers this court to Michigan's Standard Jury Instruction S.J.I.2d 50.02(d) which plaintiff indicates permits recovery under the term "pain and suffering," for the "denial of social pleasure and enjoyments" which plaintiff claims is synonymous with hedonic damages. However, it is clear from a plain reading of the Act that only "compensation for the pain and suffering, *while conscious*, undergone by the deceased person during the period intervening between the time of the injury and death [will be permitted.]" M.C.L. 600.2922(6) (emphasis added). Such a reading of the Act is completely consistent with the general understanding that hedonic damages are only available to *living* plaintiffs who have been permanently injured such that they can no longer enjoy life's pleasures and are condemned to watch life's amenities pass them by. The Pennsylvania Supreme Court stated:

Unlike one who is permanently injured, one who dies as a result of injuries is not condemned to watch life's amenities pass by. Unless we are to equate loss of life's pleasures with loss of life itself, we must view it as something that is compensable only for a living plaintiff who has suffered from that loss.

*Willinger v. Mercy Catholic Medical Center,* 482 Pa. 441, 447, 393 A.2d 1188 (1978). *See also Broome v. Antlers' Hunting Club,* 595

F.2d 921, 923 (3d Cir.1979) (stating that hedonic damages are not available in a wrongful death case because "[o]nly a living person whose faculties have been impaired through injury may recover damages for loss of life's amenities."); *Pitman v. Thorndike,* 762 F.Supp. 870, 871–72 (D.Nev.1991) (finding that hedonic damages not available in wrongful death case because such damages must be "consciously experienced.").

Plaintiff minimizes the significance of the defendants' survey of jurisdictions which have addressed the issue of whether hedonic damages are available in wrongful death actions. However, this court finds it very persuasive, and moreover believes that the Michigan Supreme Court will likewise find it persuasive, that the overwhelming number of jurisdictions, 16 out of 17 [10], which have addressed this issue have held that hedonic damages are *not* available in wrongful death actions.

In sum, because the Michigan Wrongful Death Act should be narrowly construed to limit recovery to those damages expressly provided for in the Act, and because "loss of enjoyment of life" damages are inconsistent with cases involving death, and because the overwhelming authority of states agree that hedonic damages are not available in wrongful death actions, this court finds that hedonic damages are not recoverable under the Michigan Wrongful Death Act.

---

**10.** Twenty-one cases in sixteen states, as well as three cases arising under federal law, have held the hedonic damages are not available in wrongful death actions. They are as follows: Delaware: *Sterner v. Wesley College, Inc.,* 747 F.Supp. 263, 274 (D.Del.1990); Florida: *Brown v. Seebach,* 763 F.Supp. 574, 583 (S.D.Fla.1991); Illinois: *Bramlette v. Hyundai Motor Co.,* 1992 W.L 213956 at *3 (N.D.Ill.1992); *Wyness v. Armstrong World Indus., Inc.,* 131 Ill.2d 403, 410, 137 Ill. Dec. 623, 626, 546 N.E.2d 568, 571 (1989); *Gonzales v. City Wide Insulation, Inc.,* 1990 WL 77525 at *4 (N.D.Ill.1990); Indiana: *Southlake Limousine and Coach, Inc. v. Brock,* 578 N.E.2d 677, 682 (Ind.Ct.App.1991); *Johnson v. Inland Steel Co.,* 1992 WL 396296 at *4 (N.D.Ill.1992); Kansas: *Sullivan v. Untied States Gypsum Co.,* 862 F.Supp. 317 (D.Kan.1994); Louisiana: *Simmons v. Hartford Ins. Co.,* 786 F.Supp. 574, 581 (E.D.La.1992); *Chausse v. Southland Corp.,* 400 So.2d 1199, 1204 (La.Ct.App.), *cert. denied,* 404 So.2d 278 (La.1981); Mississippi: *Buckhalter v. Burlington Northern R.R.,* 1992 WL 236676 at *1 (N.D.Miss.1992); Nevada: *Pitman v. Thorndike,*

762 F.Supp. 870, 871–72 (D.Nev.1991); New Hampshire: *Nichols v. Estabrook,* 741 F.Supp. 325, 329 (D.N.H.1989); New Jersey: *Clement v. Consolidated Rail Corp.,* 734 F.Supp. 151, 156 (D.N.J.1989); New Mexico: *Ortega v. Plexco,* 793 F.Supp. 298, 300 (D.N.M.1991); North Carolina: *Livingston v. United States,* 817 F.Supp. 601, 606 (E.D.N.C.1993); Ohio: *Singleton v. Suhr,* 1989 WL 54383 at P*3 (Ohio Ct.App.1989); Pennsylvania: *Willinger v. Mercy Catholic Medical Center,* 482 Pa. 441, 447, 393 A.2d 1188, 1191 (1978); *see also Broome v. Antlers' Hunting Club,* 595 F.2d 921, 923 (3d Cir.1979); Tennessee: *Spencer v. A–1 Crane Service, Inc.,* 880 S.W.2d 938 (Tenn.1994); Wisconsin: *Bell v. City of Milwaukee,* 746 F.2d 1205, 1235–36 (7th Cir.1984); Warsaw Convention: *In re Korean Air Lines Disaster of September 1, 1983,* 807 F.Supp. 1073, 1083 (S.D.N.Y.1992); *In re Korean Air Lines Disaster of September 1, 1983,* 814 F.Supp. 592, 599 (E.D.Mich.1993) (Same); and Maritime Law: *Shield v. Bayliner Marine Corp.,* 822 F.Supp. 81, 83 (D.Conn.1993).

### IV. Conclusion

In sum, for the reasons stated above, this court finds that plaintiff's claims for punitive and exemplary damages set forth in Counts XVI and XVII of the Amended Complaint, and plaintiff's claims for hedonic damages set forth in plaintiff's damage report should be dismissed.

### *ORDER*

**IT IS HEREBY ORDERED** that the defendants', PFIZER, INC.'s, and SHILEY, INC.'s, motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 is **GRANTED** in its entirety.

**IT IS FURTHER ORDERED** that plaintiff, DIANE KEMP's, claims for punitive and exemplary damages in Counts XVI and XVII of the Amended Complaint respectively and plaintiff's claim for hedonic damages set forth in plaintiff's damage report are hereby **DISMISSED.**

**SO ORDERED.**