In re KENDALL SQUARE RESEARCH
CORPORATION SECURITIES
LITIGATION.

Civ. A. No. 93–12352–EFH.

United States District Court,
D. Massachusetts.

Nov. 9, 1994.

Thomas G. Shapiro, Shapiro, Grace & Haber, Boston, MA, for Philip Dee, David Zatt, Marshall H. Greenfield, Bruce A. Cohen, Barry Zelin.

Glen DeValerio, Norman Berman, Berman, DeValerio & Pease, Boston, MA, for Alan H. Kaufman, William Ludwig, Alvin Slater, Shirley Slater, Linda Marcoccia.

Glen DeValerio, Norman Berman, Berman, DeValerio & Pease, Boston, MA, Stanley M. Grossman, Pomerantz, Levy, Hauder, Block & Grossman, New York, NY, for L. Ronald Daley, Joyce D. Daley.

I. Stephen Rabin, New York City, Nelson P. Lovins, Lovins & Metcalf, Woburn, MA, for Lawrence L. Lashway.

Arthur Abbey, Abbey & Ellis, New York City, for Richard Fuss.

Andrew A. Rainer, Shapiro, Grace & Haber, Boston, MA, for Robert B. Rosenberg.

Christian M. Hoffman, Foley, Hoag & Eliot, Boston, MA, for Price Waterhouse.

Jeffrey B. Rudman, Hale & Dorr, Boston, MA, for Karl Wasserman, Karl G. Wasserman, III.

### MEMORANDUM AND ORDER

HARRINGTON, District Judge.

This matter is before the Court on Defendant Price Waterhouse's Motion to Dismiss the Consolidated Amended Complaint ("CAC").

This securities action was brought on behalf of a class of purchasers of Kendall Square Research Corporation ("Kendall Square" or "the Company") common stock during the period March 27, 1992 through December 3, 1993, inclusive. The Consolidated Amended Complaint, filed May 13,

1994, alleges, *inter alia,* that plaintiffs suffered losses as a result of materially misleading statements of revenues from the sale of the Company's high performance parallel computer systems. The CAC named Price Waterhouse, a partnership licensed to practice accounting in the Commonwealth of Massachusetts, as one of several defendants.

On July 28, 1994, this Court approved a Stipulation of Settlement between the plaintiffs and all defendants except for Price Waterhouse ("the Settling Defendants"), and entered an Order of Final Judgment of Dismissal as to the settling defendants pursuant to Fed.R.Civ.P. 54(b). The Court certified the proposed class solely for purposes of settlement.

Plaintiffs seek recovery from Price Waterhouse under Section 10(b) of the Securities and Exchange Act, 15 U.S.C. § 78a, *et seq.,* and Rule 10b–5 promulgated thereunder by the Securities and Exchange Commission, 17 C.F.R. § 240.10b–5 (Count VI of CAC), Section 11 of the Securities Act, 15 U.S.C. § 77k (Count IV), and for common law fraud (Count VII).

Plaintiffs allege that Price Waterhouse had access to all of Kendall Square's financial documents and records in connection with its audits and reviews of Kendall Square's financial statements. The CAC further alleges that Price Waterhouse reviewed and approved Kendall Square's quarterly financial reports for 1992 and for the first two quarters of 1993. According to the CAC, Price Waterhouse issued an unqualified audit opinion on Kendall Square's financial statements for the Company's 1992 fiscal year, as reported in Kendall Square's 1992 10–k, stating that the statements fairly represented Kendall Square's financial position in conformity with Generally Accepted Accounting Principles ("GAAP") and had been audited in accordance with Generally Accepted Auditing Standards ("GAAS"). The CAC further alleges that Price Waterhouse reviewed and approved the representations made in the Prospectus for each of the Company's 1992 and 1993 stock offerings, including representations regarding Kendall Square's revenues (CAC ¶ 43).

Price Waterhouse moved for dismissal of all counts of the CAC pursuant to Fed. R.Civ.P. 9(b) and 12(b)(6). After oral argument, the Court rules as follows:

1. Motion to dismiss is denied as to Count VI on the ground that the CAC alleges with sufficient particularity, as required by Fed. R.Civ.P. 9(b), that the Defendant Price Waterhouse knew, in issuing its unqualified audit opinion, that Kendall Square had improperly recognized revenues.

■ "Although a plaintiff need not specify the circumstances or evidence from which fraudulent intent could be inferred, [under Rule 9(b)] the complaint must provide some factual support for the allegation of fraud." *Romani v. Shearson Lehman Hutton,* 929 F.2d 875, 878 (1st Cir.1991). "General averments of the defendant's knowledge of material falsity will not suffice." *Serabian v. Amoskeag Bank Shares, Inc.,* 24 F.3d 357, 361 (1st Cir.1994). In the instant case, Plaintiffs' CAC alleges with sufficient particularity facts which provide support for the allegations of fraud, including, *inter alia*:

(a) Price Waterhouse has served as the Company's independent auditor from at least 1989 until January, 1994, auditing the Company's financial statements for the years 1989, 1990, 1991 and 1992 (CAC ¶ 79);

(b) Price Waterhouse had access to all of the Company's financial documents and records in connection with its audits and reviews of Kendall Square's financial statements (CAC ¶ 43);

(c) Price Waterhouse issued an unqualified opinion concerning Kendall Square's financial statements for the year ended December 26, 1992 and its audit of those statements (CAC ¶¶ 85–86);

(d) Price Waterhouse audited and approved for inclusion in Kendall Square's fiscal 1992 financial statements revenues that were materially overstated and could not be reported under GAAP. These revenues included sales that were subsequently reversed, including sales to Expersoft, LRZ, University of Houston, Arithmotechniki and the University of Manchester (CAC ¶ 80);

(e) Price Waterhouse reviewed and approved Kendall Square's 1992 quarterly financial statements, and reviewed and approved revenues reported in those quarterly financial statements which were materially overstated and could not be reported under GAAP. These revenues included sales that were subsequently reversed, including sales to Cornell University and Oak Ridge National Laboratory (CAC ¶ 81);

(f) Price Waterhouse participated in the structuring of at least several of the transactions for which revenues were improperly reported (CAC ¶ 83); and

(g) the CAC identifies the accounting principles under which these transactions could not be reported as revenues, and the auditing standards that Price Waterhouse violated (CAC ¶¶ 92, 120).

█ While the Court therefore rules that Count VI will not be dismissed, the Court further concludes, however, with respect to Price Waterhouse's review and approval of the 1992 and 1993 quarterly financial statements and the 1992 and 1993 Prospectuses, that these activities do not rise to the level of actionable conduct as set forth by the Supreme Court in *Central Bank v. First Interstate Bank,* —— U.S. ——, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994). In *Central Bank,* the Court considered whether aiding and abetting a violation of Section 10(b) itself constituted a Section 10(b) violation. In concluding that it did not, the Court stated "As in earlier cases considering conduct prohibited by [Section] 10(b), we again conclude that the statute prohibits *only* the making of a material misstatement (or omission) or the commission of a manipulative act." *Id.* at ——, 114 S.Ct. at 1448 (emphasis supplied).

The Supreme Court's decision in *Central Bank* makes clear that the policy undergirding it is to constrict the ambit of private actions under Section 10(b) and to thereby reduce the number of parties implicated by that statute. Only primary violators, i.e., those who *make* a material misstatement or omission or commit a manipulative act, are subject to private suit under Section 10(b).

The instant case relates only to the alleged making of a material misstatement and does not relate to the commission of a manipulative act. The narrow issue, therefore, is whether it is charged in the CAC that the Defendant Price Waterhouse made a material misstatement or only aided and abetted the making of a material misstatement by Kendall Square. The Court rules that the CAC's allegations that Price Waterhouse reviewed and approved the quarterly financial statements and the Prospectuses do not constitute the *making* of a material misstatement; at most, the conduct constitutes aiding and abetting and is thus not cognizable under Section 10(b). *See Vosgerichian v. Commodore Int'l,* 862 F.Supp. 1371 (E.D.Pa.1994).[1] Because Price Waterhouse did not actually engage in the reporting of the financial statements and Prospectuses, but merely reviewed and approved them, the statements are not attributable to Price Waterhouse and thus Price Waterhouse cannot be found liable for *making* a material misstatement. *Cf. In re Software Toolworks, Inc. Securities Litig.,* 38 F.3d 1078 (9th Cir.1994) (In securities action brought against accounting firm, court found that accounting firm's participation in *drafting* misleading letters to the SEC was sufficient conduct to support a claim of primary liability for making a material misstatement).[2]

---

**1.** Plaintiffs further allege that Price Waterhouse's involvement in the "structuring" of many of the Company's improperly recognized transactions also gives rise to Section 10(b) liability. The Court rules otherwise. While participation in the "structuring" of transactions may be evidence of Price Waterhouse's knowledge at the time it provided its audit opinion, the participation in the "structuring" does not constitute the making of a material misstatement; rather, it is the improper reporting of the "structured" transactions by the Company in its quarterly statements that constitutes the alleged Section 10(b) violation. Once again, it is clear that after

*Central Bank,* only the making of material misstatements (or omissions) will be actionable under Section 10(b).

**2.** Plaintiffs cite *In re ZZZZ Best Securities Litg.,* 864 F.Supp. 960 (C.D.Cal.1994) in support of their argument that the alleged actions of Price Waterhouse in reviewing and approving the Company's quarterly financial statements and Prospectuses are sufficient to support a finding of primary liability under Section 10(b) and Rule 10b–5. To the extent *ZZZZ Best* provides such support, the Court declines to follow that decision, relying instead on the Supreme Court's

As a result of the Court's ruling, plaintiffs' claims will go forward under Count VI on the basis of the unqualified audit opinion provided by Price Waterhouse in connection with the March 25, 1993 secondary public offering. In anticipation of the hearing with regard to class certification, the Court shall consider the instant ruling binding when determining the appropriate class period.

2. Motion to Dismiss is denied as to Count IV on the ground that the CAC sufficiently alleges that one putative class member "traces" his purchase of shares to the Registration Statement relating to the second public offering of March 25, 1993. The allegation in the complaint that "Mr. Rosenberg also purchased 400 shares of Kendall Square common stock at $16.00 per share on March 25, 1993 *in* the Company's secondary public offering" (CAC ¶ 17) (emphasis supplied) meets plaintiff Rosenberg's burden of pleading on this issue. *See Shapiro v. UJB Financial Corp.*, 964 F.2d 272 (3d Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 365, 121 L.Ed.2d 278 (1992). However, because none of the other plaintiffs allege "tracing," the Court grants Price Waterhouse's motion to dismiss Count IV with respect to all plaintiffs except for Mr. Rosenberg.

3. Motion to Dismiss is denied as to Count VII on the ground that plaintiffs have alleged reliance on the materially false and misleading statements of Price Waterhouse. While plaintiffs do not plead that any plaintiff actually received or read Price Waterhouse's audit opinion regarding Kendall Square's 1992 financial statements, the Court will not consider the factual issue of actual reliance on a motion to dismiss. *See In re Bank of Boston Corp. Securities Litig.*, 762 F.Supp. 1525, 1537 (D.Mass.1991).

Accordingly, this action will proceed on the issues of whether Price Waterhouse violated Section 10(b) and Rule 10b–5 in issuing its audit opinion regarding the Company's 1992 financial statements, whether Price Waterhouse violated Section 11 with respect to Mr. Rosenberg's purchase of shares in the March 25, 1993 secondary public offering, and whether Price Waterhouse may be liable for common law fraud.

SO ORDERED.

emphatic conclusion in *Central Bank* that "Section 10(b) prohibits *only* the making of a material misstatement (or omission) or the commission of a manipulative act." —— U.S. at ——, 114 S.Ct. at 1448 (emphasis supplied).