**Douglas E. O'NEIL, et al., Plaintiffs,**

v.

**Curtis H. APPEL, et al., Defendants.**

**No. 1:94–CV–97.**

United States District Court,
W.D. Michigan,
Southern Division.

April 26, 1995.

---

Fredric N. Goldberg, Mika, Meyers, Beckett & Jones, P.L.C., Grand Rapids, MI, Michael B. Hyman, Edith F. Canter, Much, Shelist, Freed, Denenberg & Ament, P.C., Chicago, IL, Martis Ann Brachtl, Goodkind, Labaton, Rudoff & Sucharow, LLP, New York City, for plaintiff Douglas E. O'Neil.

Fredric N. Goldberg, Mika, Meyers, Beckett & Jones, P.L.C., Grand Rapids, MI, Michael B. Hyman, Edith F. Canter, Much, Shelist, Freed, Denenberg & Ament, P.C., Chicago, IL, Martis Ann Brachtl, Goodkind, Labaton, Rudoff & Sucharow, LLP, New York City, Kenneth A. Elan, Kenneth A. Elan Law Office, New York City, Joseph Garland, Rabin & Garland, New York City, for plaintiff Harry Hoffman.

Fredric N. Goldberg, Mika, Meyers, Beckett & Jones, P.L.C., Grand Rapids, MI, Michael B. Hyman, Edith F. Canter, Much, Shelist, Freed, Denenberg & Ament, P.C., Chicago, IL, Martis Ann Brachtl, Goodkind, Labaton, Rudoff & Sucharow, LLP, New York City, Francine Schwartz, Francine Schwartz Law Office, Chicago, IL, for plaintiffs Richard L. Christensen, Craig G. Babcock.

Fredric N. Goldberg, Mika, Meyers, Beckett & Jones, P.L.C., Grand Rapids, MI, Frederic Scott Fox, Joel B. Strauss, Kaplan, Kilsheimer & Fox, New York City, Michael B. Hyman, Edith F. Canter, Much, Shelist, Freed, Denenberg & Ament, P.C., Chicago, IL, Martis Ann Brachtl, Goodkind, Labaton, Rudoff & Sucharow, LLP, New York City, Kenneth A. Elan, Kenneth A. Elan Law Office, New York City, for plaintiff Robert Esna.

Fredric N. Goldberg, Mika, Meyers, Beckett & James, P.L.C., Grand Rapids, MI, Michael B. Hyman, Edith F. Canter, Much, Shelist, Freed, Denenberg & Ament, P.C., Chicago, IL, Martis Ann Brachtl, Goodkind,

Labaton, Rudoff & Sucharow, LLP, New York City, Joseph H. Weiss, Joseph H. Weiss Law Office, New York City, for plaintiff David Babe.

Fredric N. Goldberg, Mika, Meyers, Beckett & James, P.L.C., Grand Rapids, MI, Edward M. Gergosian, Barrack, Rodos & Bacine, San Diego, CA, Michael B. Hyman, Edith F. Canter, Much, Shelist, Freed, Denenberg & Ament, P.C., Chicago, IL, Martis Ann Brachtl, Goodkind, Labaton, Rudoff & Sucharow, LLP, New York City, C. Keith Greer, Colton, Roesser & Greer, Del Mar, CA, for plaintiff Mark Christiansen.

Fredric N. Goldberg, Mika, Meyers, Beckett & Jones, P.L.C., Grand Rapids, MI, for plaintiffs Lee E. Ginsburg and James Chambers.

Fredric N. Goldberg, Mika, Meyers, Beckett & Jones, P.L.C., Grand Rapids, MI, Norman Rifkind, Beigel, Schy, Lasky, Rifkind, Goldberg & Fertik, Chicago, IL, Bernard Wiczer, Wiczer & Associates Chtd., Northbrook, IL, for plaintiff Herbert Eldean.

Christopher G. Hastings, Drew, Cooper & Anding, Grand Rapids, MI, Michael C. Miller, Fritz & Miller, New York City, for defendant Embrace Systems Corp.

Michael C. Miller, Fritz & Miller, New York City, Curtis H. Appel, Curtis Appel Law Offices, Chicago, IL, for defendants Curtis H. Appel, Joel Ramey.

Kenneth A. Flaska, Joseph John Bernardi, Kasiborski, Ronayne & Flaska, PC, Detroit, MI, for defendant Donald W. Freeman.

Bradley K. Glazier, Bos & Glazier, Grand Rapids, MI, Michael C. Miller, Steven J. Shapero, Shapero & Shapero, Woodland Hills, CA, for defendant James Blatchley.

John Sharp, Strobl & Manoogian, PC, Bloomfield Hills, MI, Jonathan F. Thoits, Day & Sawdey, PC, Grand Rapids, MI, for defendant Frederick M. Barnard.

Michael C. Miller, Fritz & Miller, New York City, Frank F. Sommers, IV, Frank F. Sommers Law Offices, San Francisco, CA, for defendant David Brule.

Michael C. Miller, Fritz & Miller, New York City, for defendant Daniel Harris.

Dan E. Bylenga, Jr., Schenk, Boncher & Prasher, Grand Rapids, MI, Robert D. VanderLaan, Miller, Canfield, Paddock & Stone, Grand Rapids, MI, for defendant Price Waterhouse.

## *OPINION*

ROBERT HOLMES BELL, District Judge.

This case involves allegations of securities fraud against Defendants, including Price Waterhouse, in violation of Section 10(b) of the Securities Exchange Act as well as common-law fraud and civil conspiracy, related to the stock of Embrace Systems Corporation (Embrace). Before the Court at this time is Price Waterhouse's motion to dismiss pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure.

### I

Since this case is before the Court on Price Waterhouse's motion to dismiss, the Court must accept as true all the factual allegations in Plaintiffs' complaint. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* — U.S. —, —, 113 S.Ct. 1160, 1161, 122 L.Ed.2d 517, 522 (1993). Accordingly, the following statement of the facts is taken from Plaintiffs' second consolidated amended complaint.

The putative class of plaintiffs in this case are persons who purchased common stock of Embrace between May 21, 1992 and February 15, 1994 ("the Class Period"). The defendants are Embrace, six individuals who were officers, directors, and/or employees of Embrace, and Price Waterhouse. Embrace manufactures plastics for plastic containers. During the Class Period, Embrace also began developing Puffibre, which is a type of insulation.

Plaintiffs allege that Defendants, including Price Waterhouse, made material misrepresentations during the Class Period which were relied upon and had the effect of artificially inflating the price of Embrace's stock thereby causing injury to the putative class members. Relevant to Price Waterhouse, those misrepresentations included an understatement of the number of outstanding share of stock by 5.5 million and an improperly inflated value of Embrace's assets.

Plaintiffs allege that Price Waterhouse's involvement in this fraudulent scheme included its assistance in the drafting of and review of four quarterly filings which Embrace filed with the Securities Exchange Commission (SEC) during the Class Period.

Plaintiffs further allege that, on April 15, 1993, Embrace filed an unqualified audit opinion of Price Waterhouse with the SEC as part of Embrace's annual report to the SEC for the year ending December 31, 1992. In this written opinion, Price Waterhouse stated that Embrace's year-end financial statements were in accordance with Generally Accepted Accounting Principles (GAAP) and that Price Waterhouse had conducted its examination of the financial statements in accordance with Generally Accepted Auditing Standards (GAAS). Plaintiffs allege that both of these statements are materially false.

Embrace incorporated by reference this annual report, and accordingly Price Waterhouse's audit opinion, into three Form S–8s which it subsequently filed with the SEC. Through these forms, Embrace obtained permission to issue 1,950,000 additional shares of common stock, much of which was issued to parties related to Embrace for the purpose of making investors think that there was an active market for Embrace's common stock.

Plaintiffs allege that each of these incidents constitutes a material misstatement by Price Waterhouse for which it may be held primarily liable under Section 10(b) of the Securities Exchange Act, for the reason that Price Waterhouse knew or was reckless in not knowing that Embrace's submissions to the SEC were false, especially for the reasons of the understated number of outstanding stock shares and the inflated valuation of Embrace's assets.

Plaintiffs have named Price Waterhouse as a defendant in three of their counts: Count I, for alleged violations of Section 10(b) and Rule 10b–5 promulgated thereunder by the SEC; Count IV, for common-law fraud; and Count V, for civil conspiracy.

## II

Price Waterhouse argues that Plaintiffs' Section 10(b) claim against it must be dismissed for its failure either to state a cognizable claim against it or to plead fraud with particularity.

### A.

■ The Court first considers Price Waterhouse's contention that Plaintiffs' Section 10(b) claim must be dismissed for its failure to state a cognizable claim against it. The Court may not dismiss a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure "unless it appears beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim which would entitle [them] to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *National Org. of Women, Inc. v. Scheidler,* 510 U.S. ——, ——, 114 S.Ct. 798, 802, 127 L.Ed.2d 99, 107 (1994) (Plaintiffs' "complaint must be sustained if relief could be granted 'under any set of facts that could be proved consistent with the allegations.'") (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)). Thus, if the facts, as pleaded by Plaintiffs, are sufficient to establish each essential element of a claim under Section 10(b), the Court must deny Price Waterhouse's motion.

Section 10(b) of the Securities Exchange Act states:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

\* \* \* \* \* \*

(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary and appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j. Rule 10b–5 promulgated by the SEC provides:

It shall be unlawful for any person, directly or indirectly, by use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statement made, in the light of the circumstances under which they were made, not misleading, or,

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b–5.

Following the Supreme Court's recent opinion in *Central Bank v. First Interstate Bank,* 511 U.S. ——, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994), it appears that a defendant will be liable under Section 10(b) if and only if a plaintiff is able to prove all of the elements of a primary liability claim against it. *Id.,* 511 U.S. at ——, 114 S.Ct. at 1455, 128 L.Ed.2d at 141. In *Central Bank,* the Supreme Court specifically held that secondary liability for aiding and abetting a violation of Section 10(b) does not exist under that section. *Id.* Rather, Section 10(b) liability may be incurred only by the one who actually *makes* a material misstatement: "As in earlier cases considering conduct prohibited by § 10(b), we again conclude that the statute prohibits only the *making* of a material misstatement (or omission) or the commission of a manipulative act." *Id.* at ——, 114 S.Ct. at 1448, 128 L.Ed.2d at 132.

*Central Bank* makes it clear, nevertheless, that an accounting firm, such as Price Waterhouse, may be found primarily liable: "Any person or entity, including a lawyer, accountant, or bank, who employs a manipulative device or makes a material misstatement (or omission) on which a purchaser or seller of securities relies may be liable as a primary violator under 10b–5, assuming *all* of the requirements for primary liability under

Rule 10b–5 are met." *Id.* at ——, 114 S.Ct. at 1455, 128 L.Ed.2d at 141.

With this in mind, the Court considers whether Plaintiffs have successfully pleaded a primary claim against Price Waterhouse under Section 10(b). Clearly, Plaintiffs have *framed* their Section 10(b) claim against Price Waterhouse as one for primary liability. Price Waterhouse asserts, however, that this is merely artful pleading—that Plaintiffs' claim is in reality one seeking to establish aiding and abetting liability against it.

This precise issue was considered in *In re Kendall Square Research Corp. Sec. Litig.,* 868 F.Supp. 26 (D.Mass.1994). In that case, also involving Price Waterhouse, the plaintiffs alleged that Price Waterhouse had: (1) reviewed and approved six of Kendall Square's quarterly reports, (2) issued an unqualified audit opinion on Kendall Square's financial statements for its annual report, and (3) reviewed and approved Kendall Square's representations which it made in prospectuses for two stock offerings. *Id.* at 27. With regard to the first and third of these allegations, the court concluded that "these activities do not rise to the level of actionable conduct as set forth by the Supreme Court in [*Central Bank*]." *Id.* at 28. The court reasoned that Price Waterhouse's reviewing and approving of quarterly statements or prospectuses "do not constitute the *making* of a material misstatement; at most, the conduct constitutes aiding and abetting and is thus not cognizable under Section 10(b)." *Id.* On the other hand, the court permitted the plaintiffs to go forward on the basis of the unqualified audit opinion, *id.* at 29, apparently for the reason that, as pleaded, the audit opinion constituted the making of a material misstatement.

The instant Court finds the reasoning of *Kendall Square* convincing and in accord with other case law. *See, e.g., In re Software Toolworks, Inc.,* 38 F.3d 1078 (9th Cir.1994), and *Kline v. First Western Gov't Sec.,* 24 F.3d 480 (3d Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 613, 130 L.Ed.2d 522 (1994). Thus, as in *Kendall Square,* the Court concludes that if, as Plaintiffs have pleaded, Price Waterhouse issued an unqualified audit opinion which was false when it knew or was reckless in not knowing of this falsity, and consented to the use of this opinion as an attachment to Embrace's SEC filings, then Price Waterhouse might be primarily liable under Section 10(b) with regard to the audit opinion. Similarly, if, as Plaintiffs have pleaded, Price Waterhouse knew that this opinion might be attached to Embrace's Form S–8s, then it would be primarily liable under Section 10(b) with regard to the specified Form S–8s. And, unlike the facts of *Kendall Square,* if, as Plaintiffs have pleaded, Price Waterhouse not only reviewed Embrace's quarterly reports prior to their submission to the SEC but also assisted in the drafting of them, then Price Waterhouse may be liable with regard to those quarterly forms.

Therefore, since the Court must accept Plaintiffs complaint as true for the purpose of this Rule 12(b) motion, the Court will not grant Price Waterhouse's motion to dismiss on this basis. Clearly, Price Waterhouse can file a motion for summary judgment on this issue if it appears that Plaintiffs will be unable to establish primary liability against Price Waterhouse in each of these regards.

### B

■ Price Waterhouse further contends that Plaintiffs' Section 10(b) claim against it must be dismissed for its failure to plead fraud with particularity. Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." The rule further provides that "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally." The Court must read this rule in harmony with the simplified pleading requirements of Rule 8, *Michaels Bldg. Co. v. Ameritrust Co.,* 848 F.2d 674, 679 (6th Cir.1988), remaining cognizant of the purpose of Rule 9(b): "[T]he purpose undergirding the particularity requirement of Rule 9(b) is to provide a defendant fair notice of the substance of a plaintiff's claim in order that the defendant may prepare a responsive pleading." *Id.*

■ Price Waterhouse asserts that Plaintiffs have failed to plead fraud with particularity because they have failed to plead scienter. While "scienter" is an essential element of a Section 10(b) claim, *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 193, 96 S.Ct. 1375, 1380–81, 47 L.Ed.2d 668 (1976), the courts, including the Sixth Circuit, have nearly unanimously concluded that, for the purposes of a Section 10(b) claim, "scienter" includes the concept of "recklessness". *See, e.g., Auslender v. Energy Mgmt. Corp.,* 832 F.2d 354 (6th Cir.1987). The Sixth Circuit has defined "recklessness" in this context as "highly unreasonable conduct which is an extreme departure from the standards of ordinary care. While the danger need not be known, it must at least be so obvious that any reasonable man would have known of it." *Mansbach v. Prescott, Ball & Turben,* 598 F.2d 1017, 1025 (6th Cir.1979) (citing *Sundstrand Corp. v. Sun Chem. Corp.,* 553 F.2d 1033, 1045 (7th Cir.), *cert. denied,* 434 U.S. 875, 98 S.Ct. 224, 54 L.Ed.2d 155 (1977)).

■ The Court finds that the second consolidated amended complaint adequately pleads scienter:

> 21. Price Waterhouse personnel, while engaged by Embrace, had access to and knowledge of Embrace's private and confidential corporate financial and business information, including internal financial reports, board minutes and internal memoranda and thus knew or were reckless in not knowing the true facts as alleged herein concerning Embrace's actual financial condition, business problems and accounting fraud which were concealed from the investing public.

Pls.' Second Consol. Amended Compl. ¶ 21. The complaint alleges conduct which could constitute recklessness, either as a legal or factual finding. Moreover, scienter involves intent and condition of mind, which Rule 9(b) expressly excludes from its scope.

Therefore, the Court will not grant Price Waterhouse's motion to dismiss Plaintiffs' Section 10(b) claim on the basis of Rule 9(b), and, accordingly, the Court will deny that motion.

Next, the Court considers that part of Price Waterhouse's motion to dismiss directed at Plaintiffs' state-law claim.

**A**

In its motion, Price Waterhouse argues that the Court should apply New York law to Plaintiffs' state-law claims, whereas Plaintiffs contend that the Court should apply Michigan's. This Court applies the choice-of-law rules of Michigan: "[A] federal court must apply the choice-of-law rules of the state in which it sits...." *Mahne v. Ford Motor Co.,* 900 F.2d 83, 85 (6th Cir.), *cert. denied,* 498 U.S. 941, 111 S.Ct. 349, 112 L.Ed.2d 313 (1990) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)); *Rohm & Haas Co. v. Adco Chem. Co.,* 689 F.2d 424, 429 (3d Cir. 1982) (federal court applies the choice-of-law rules of the forum state whether jurisdiction over the state-law claim is based on diversity of citizenship or is pendent).

■ Under Michigan choice-of-law rules, the law of the forum state is presumed to apply unless there is a rational reason why another state's law should supersede the law of the forum state. *Mahne,* 900 F.2d at 87 (citing *Olmstead v. Anderson,* 428 Mich. 1, 30, 400 N.W.2d 292 (1987). As the Michigan Supreme Court noted in *Olmstead v. Anderson,* 428 Mich. 1, 400 N.W.2d 292 (1987), since no specific methodology was adopted by the Michigan Supreme Court in *Sexton v. Ryder Truck Rental, Inc.,* 413 Mich. 406, 320 N.W.2d 843 (1982), "each case must be evaluated on the circumstances presented." 428 Mich. at 24, 400 N.W.2d 292. "The question to be resolved is whether this case presents a situation in which reason requires whether this case presents a situation in which reason requires that foreign law supersedes the law of this state." *Id.*

■ In determining whether there is a rational reason to supersede the law of the forum, the Court's first duty is to examine the foreign state's interest, if any, in having its law applied. *Mahne,* 900 F.2d at 87. If it has an interest of some kind, the Court must then determine whether the foreign state's interest outweighs Michigan's interest in

having its law applied. *Mahne,* 900 F.2d at 87; *Olmstead,* 428 Mich. at 30, 400 N.W.2d 292. If the Court reaches this comparative interest-analysis step, the Court should also consider the plaintiffs' residences, the place of the wrong, the connections with the forum state, and whether the foreign law sought to be applied will benefit the interests it was designed to protect. *Mahne,* 900 F.2d at 88 (citing *Olmstead,* 428 Mich. at 28–29, 400 N.W.2d 292).

■ In the instant case, Price Waterhouse has not indicated what interest New York has in having its law applied in this case. Neither can the Court find one. Therefore, the Court will apply Michigan law to Plaintiffs' state-law claims. Even if the Court were to reach the comparative interest-analysis step, however, whatever interests New York has in having its law applied is at least equalled by Michigan's interest, such that the presumption in favor of the forum's law would go unrebutted: this case involves plaintiffs from both states and defendants from both states; while Embrace was located in New York at the commencement of the Class Period, it moved its operations to Michigan during that period; and, while Embrace dealt mainly with Price Waterhouse's Buffalo, New York office, most of the alleged fraudulent conduct occurred in Michigan or could be established by documents located in Michigan.

### B

■ Price Waterhouse's motion challenges Plaintiffs' state-law fraud claim on the same bases that it challenged their Section 10(b) claim—that it fails to state a claim against Price Waterhouse and to plead fraud with particularity.

Under Michigan law, to plead properly common-law fraud,

> it must appear: (1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in

reliance upon it; and (6) that he thereby suffered injury.

*Kassab v. Michigan Basic Prop. Ins. Ass'n,* 441 Mich. 433, 442, 491 N.W.2d 545 (1992) (quoting *Hi-Way Motor Co. v. International Harvester Co.,* 398 Mich. 330, 336, 247 N.W.2d 813 (1976)). Plaintiffs' complaint adequately pleads each of these elements.

With regard to Price Waterhouse's argument that Rule 9(b) requires Plaintiffs to plead this scienter with particularity, the Court again concludes that, since scienter involves intent and condition of mind, it is excluded from the scope of Rule 9(b).

### C

Finally, with regard to Plaintiffs' civil conspiracy claim against it, Price Waterhouse's argument was based on the Court's applying New York law. Since the Court has concluded that Michigan law applies, however, this aspect of Price Waterhouse's motion is moot.

### IV

An order consistent with this opinion will be entered.

### *ORDER*

In accordance with the opinion entered this date,

**IT IS HEREBY ORDERED** that Defendant Price Waterhouse's motion to dismiss (docket # 94) is **DENIED.**